**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.                                                            No. 97-2169

MIKEL BORNFIELD,

Defendant-Appellant.

**ORDER DENYING PETITION TO RECALL MANDATE**

Before **BALDOCK** and **BARRETT**, Circuit Judges.[*]

**BARRETT**, Senior Circuit Judge.

This matter comes before the court on petitioner-appellant Mikel Bornfield's (Bornfield)

Petition to Recall Mandate filed June 8, 1999. The petition is denied.

Bornfield, by and through his counsel, petitioned this court to recall the mandate affirming

his conviction and sentence for engaging in a monetary transaction in criminally derived property,

in violation of 18 U.S.C. § 1957(a). *See United States v. Bornfield*, 145 F.3d 1123 (10th Cir. 1998).

---

[*]      The Honorable James K. Logan, Senior Judge, United States Court of Appeals for
the Tenth Circuit, participated in the decision in this case but did not participate in this Order.
Judge Logan resigned on July 15, 1998.

In his petition, Bornfield contends that this court erred in finding that he failed to object to the deliberate ignorance jury instruction with respect to Count 1, the count of conviction. Thus, Bornfield argues that this court erred in analyzing his challenge to the instruction for plain error, rather than abuse of discretion. Bornfield misplaces the error.

In support of his petition, Bornfield attached an affidavit of the district court[1] explaining how the district court's past procedures allowed objections to jury instructions to take place in conferences off the record. It is this procedure which resulted in this court's review of an incomplete record. If this court accepts the district court's affidavit as correct, Bornfield objected in two off the record conferences with the district court's law clerks to the deliberate ignorance instruction with respect to Count 1 and then briefly restated the "reasons" for his objection on the record. The district court apparently attempts to modify the record to reflect that Bornfield "raised this objection, for the reasons stated on the record, and that the Court overruled the objection." We have repeatedly counseled against similar procedures. *See Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1447 (10th Cir. 1990); *United States v. Sloan*, 811 F.2d 1359, 1361-62 n.2 (10th Cir. 1987). *Cf. Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462, 1464 (10th Cir. 1994).

Contrary to Bornfield's assertions and the district court's insinuations, this court did not err. On the certified record before this court, there was no proper objection to the deliberate ignorance

---

[1] We refer to the district court's "Memorandum Opinion and Order" as an affidavit because we cannot discern under what authority the court had jurisdiction to issue such an order or to attempt to modify the record on appeal so late in the judicial process. This court's opinion, *Bornfield*, 145 F.3d 1123, was filed May 13, 1998. Bornfield's "Motion to Supplement the Record" and "Petition for Rehearing" were denied June 10, 1998. On September 16, 1998, Bornfield filed a "Motion to Stay Voluntary Surrender and For Hearing to Clarify the Record" in the district court. The district court's affidavit was filed on November 19, 1998. Finally, Bornfield's "Petition to Recall Mandate" was filed June 8, 1999.

instruction with respect to Count 1. The error in this case lies with the district court and Bornfield.

At trial, the district court erroneously held initial jury instruction conferences off the record with inadequate procedures for preserving the objections for appellate review. In its affidavit, the district court averred that Bornfield stated on the record his reasons for his objection. On the contrary, Bornfield's statements during the on the record jury instruction conference did not qualify as proper objections to the instruction.[2] *Bornfield*, 145 F.3d at 1129. Bornfield knew the conferences were off the record. Thus, he knew, or should have known, that he needed to properly renew his objection on the record to preserve it for appeal. Federal Rule of Criminal Procedure 30 requires an objection to the challenged jury instruction before the jury retires. Fed. R. Crim. P. 30. *See Bornfield*, 145 F.3d at 1129. Bornfield was obligated to object *on the record* before the jury retired to preserve his objection for appellate review, even though the district court made this more difficult than necessary. *See* 10th Cir. R. 28.2(c) (with respect to jury instructions "a party must record an objection to preserve the right to appeal").

On appeal, the proper composition of the record was Bornfield's obligation. 10th Cir. R. 10.3 ("[I]t is counsel's responsibility to see that the record on appeal is sufficient for consideration and determination of the issues on appeal."); Fed. R. App. P. 10. He was obligated to ensure his objection was properly preserved in the record, even if the initial objection conferences were not

---

[2]      In its affidavit, the district court makes much of the fact that Bornfield summarized his objection on the record and merely failed to use the specific word "object." Contrary to the district court's inferences, the specific use of "object" is not always necessary. It is necessary, however, to "stat[e] distinctly the matter to which that party objects and the grounds of the objection" on the record before the jury retires to consider its verdict. Fed. R. Crim. P. 30. Generalized objections, such as those Bornfield made on the record, are insufficient. *Bornfield*, 145 F.3d at 1129. *See United States v. Zang*, 703 F.2d 1186, 1196 (10th Cir.1982), *cert. denied*, 464 U.S. 828 (1983).

recorded. Federal Rule of Appellate Procedure 10(c) provides for the submission of a statement of the evidence in situations were the proceedings were not recorded. Fed. R. App. P. 10(c). Rule 10(e) also allows for correction or modification of the record if any differences arise about whether the record truly discloses what occurred in the district court or if anything material is omitted. Fed. R. App. P. 10(e). Furthermore, the lack of a proper objection on the record should have become obvious in the preparation of his appellate briefs. Tenth Circuit Rule 28.2(c) requires the appellant challenging a jury instruction to include in his opening brief "a statement as to where a proper objection and the court's ruling thereon may be found *in the record.*" 10th Cir. R. 28.2(c) (emphasis added). It is irrelevant that "[the district court and] both parties understood throughout the course of the trial that [Bornfield] objected" to the instruction, as the district court points out in its affidavit. There was not a proper objection on the record for appellate review.

Notwithstanding Bornfield's off the record objection, there is no manifest injustice. The result of this appeal would have been the same. Although this court analyzed the challenge to the deliberate ignorance instruction under the plain error standard, rather than abuse of discretion, the analysis was thorough and included a detailed review of the record on appeal.[3] *Bornfield*, 145 F.3d at 1128-30. In addition, the 404(b) evidence (Terrell's testimony regarding his recreational drug use with Bornfield) does not significantly affect the deliberate ignorance instruction with respect to Count 1 which concerned the $13,000 cash received from Gonzagowski, especially in view of Gonzagowski's testimony regarding paying for tax return preparation with cocaine, the expert testimony regarding Gonzagowski's tax returns, and Bornfield's own admissions that he knew

---

[3]     The district court evidently missed this analysis because in its affidavit it stated that this court "declined to address this issue."

- 4 -

Gonzagowski was involved with cocaine.  *Bornfield*, 145 F.3d at 1129-30.  The admission of the 404(b) evidence, if error, was still harmless.

PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 13 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

      v.

MIKEL BORNFIELD,

    Defendant-Appellant.

No. 97-2169

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-95-524)

Billy R. Blackburn, Albuquerque, New Mexico, for appellant.

Stefan D. Cassella and Lena D. Watkins, United States Department of Justice, Washington, D.C.,
(John C. Keeney and Theresa M.B. Van Vliet, United States Department of Justice, Washington,
D.C., with them on the brief), for appellee.

Before **BALDOCK**, **BARRETT**, and **LOGAN**, Circuit Judges.

**BARRETT**, Senior Circuit Judge.

Mikel Bornfield (Bornfield) appeals from his conviction and sentence following a jury trial

wherein he was found guilty of engaging in a monetary transaction in criminally derived property,

in violation of 18 U.S.C. §§ 2 and 1957(a).

Background

Bornfield is a certified public accountant in Albuquerque, New Mexico. In the late 1980s, he prepared tax returns for Sidney and Laurenda Terrell (the Terrells) and Richard Gonzagowski (Gonzagowski). During this time, Sidney Terrell (Terrell) owned a variety of fledgling businesses and Gonzagowski was self-employed in the roofing business. However, Terrell and Gonzagowski both testified that they earned most of their income in the late 1980s and early 1990s from drug trafficking.[1]

On March 2, 1993, Bornfield lent Terrell $7,000. Terrell asked for the loan in order to make his half of a land payment on the Los Lunas property, which he owned jointly with Gonzagowski through their company, Manana Brothers. Due to problems in the past, the escrow company, Southwest Escrow Company (Southwest), would not accept personal checks from the Terrells. Accordingly, Bornfield accepted $5,000 from Terrell, added it to the $7,000 loan, and wrote a check from his business account payable to Southwest in the amount of $12,000 on behalf of Terrell.

On March 3, 1993, Terrell's wife, Laurenda Terrell (Laurenda), obtained $13,000 in cash from Gonzagowski for his half of the land payment. With the $12,000 check from Bornfield and the $13,000 cash from Gonzagowski, Laurenda attempted to make the land payment. However, for security reasons, Southwest refused to accept such a large quantity of cash.

Laurenda then called on Bornfield, her accountant and tax advisor, for assistance. She gave Bornfield the cash she received from Gonzagowski and Bornfield wrote a check from his personal

---

[1]    Terrell's testimony regarding his income from drug sales concerns primarily the time period after March 3, 1993. (Appellant's Appendix, Vol. I at 317, 367-68.)

account to Southwest in the amount of $13,007.42. Thereafter, deposits were made to Bornfield's personal account on March 4, 1993, in the amounts of $3,880 and $3,010 and on March 9, 1993, in the amount of $6,003.[2]

On November 8, 1995, a grand jury returned a five-count First Superseding Indictment against Bornfield and three codefendants. On October 25, 1996, following plea agreements by the codefendants, the indictment was amended to redact portions that did not pertain to Bornfield and to drop the conspiracy charge. The amended indictment charged Bornfield with one count of engaging in a monetary transaction in criminally derived property, in violation of 18 U.S.C. §§ 2 and 1957 (Count 1), and one count of structuring transactions with a domestic institution knowingly and willfully and for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), in violation of 31 U.S.C. §§ 5322(b) and 5324(a)(3) (Count 2). The indictment also contained a forfeiture allegation that Bornfield shall forfeit all property, real and personal, involved in the money laundering offense in Count 1 and the structuring currency transactions offense in Count 2, pursuant to 18 U.S.C. § 982(a)(1). In addition, the forfeiture allegation provided for substitute property to be forfeited, if necessary, pursuant to 18 U.S.C. § 982(b)(1)(A) and 21 U.S.C. § 853(p).

Prior to trial, the government proffered the testimony of Bornfield's codefendants, Terrell and Gonzagowski, as to their observations and other knowledge of Bornfield's recreational use of cocaine and marijuana. The government proffered Terrell's testimony that he provided Bornfield with cocaine and used cocaine with Bornfield 30 to 40 times between 1988 and 1993 and Gonzagowski's testimony that he provided Bornfield with approximately $200 worth of cocaine on

---

[2]     The testimony is contradictory as to whether Laurenda gave Bornfield the cash she received from Gonzagowski at one time or whether he received the money in three installments, as it was deposited.

four or five occasions in exchange for Bornfield's preparation of falsified tax returns. The government asserted that the evidence was inextricably intertwined with the money laundering and structuring offenses showing the long standing relationship between Bornfield, Terrell, and Gonzagowski. In the alternative, the government argued that pursuant to Fed. R. Evid. 404(b) the evidence circumstantially established Bornfield's knowledge that the $13,000 in cash he received from Laurenda and deposited in his bank account was from drug trafficking. Bornfield, in turn, filed a motion in limine to exclude this evidence on the grounds that it was inadmissible under Fed. R. Evid. 404(b).

The district court denied Bornfield's motion. The court determined that Terrell could testify he provided cocaine to and used cocaine with Bornfield and that Gonzagowski could testify that he paid Bornfield for tax preparation services with cocaine. The court excluded cumulative testimony of drug usage and testimony that Terrell and/or Gonzagowski merely observed Bornfield using cocaine. Although neither party sought a limiting instruction regarding this evidence, the court, on its own motion, included such an instruction advising the jury that it could only consider the evidence of Bornfield's drug usage for the limited purpose of determining whether he had the state of mind or knowledge necessary to commit the crime charged in Count 1 of the indictment. (Appellant's Appendix, Vol. III at 946-51). *See id.* Vol. I at 157; Vol. III at 986-87.

On January 13, 1997, Bornfield's trial commenced. At the beginning of the fourth day of trial, the courtroom clerk and the court reporter informed the court and the parties that on two occasions a juror voiced dissatisfaction with the pace of the trial. The courtroom clerk advised that a juror asked her about the length of the trial, expressing her displeasure with the repetitive nature of the questioning process and, specifically, with counsel for the government. *Id.* Vol. II at 683. The

courtroom clerk commented that the juror was "very irate" and "really upset." *Id*. The disgruntled juror voiced this opinion in the presence of two other jurors and made similar comments to the court reporter. *Id*. at 683-84 After discussion with counsel and over Bornfield's objection, the court decided to dismiss the juror in question as the alternate at the end of the trial. *Id*. at 690-91.

On January 17, 1997, the jury returned a verdict of guilty of money laundering in Count 1 and not guilty of structuring currency transactions in Count 2. The jury also returned a special verdict in favor of forfeiture with respect to Count 1. On May 5, 1997, the district court ordered forfeiture of $13,007.42 contained in account number 01-2620936-0 at Sunwest Bank, Albuquerque, New Mexico. In addition, Bornfield was sentenced to 24 months imprisonment and two years of supervised release.

On appeal, Bornfield contends that: (1) the district court erred by instructing the jury on deliberate ignorance; (2) the district court erred in admitting evidence of his prior recreational drug use; (3) there is insufficient evidence to support his conviction; (4) he was denied his Sixth Amendment right to an impartial jury when the district court refused to excuse a juror for misconduct and bias toward the parties; and (5) the district court erred in ordering the forfeiture of $13,007.42 from his bank account.

Discussion

I. Deliberate Ignorance Instruction

Bornfield contends that the district court erred by instructing the jury on deliberate ignorance with respect to Count 1, the money laundering charge. He contends that the government failed to present evidence he performed deliberate acts to avoid actual knowledge that the $13,000 cash from Gonzagowski was criminally derived property and that the form of the instruction was erroneous.

- 5 -

Bornfield failed to object to the deliberate ignorance jury instruction with respect to Count 1. Although Bornfield successfully argued against the instruction with regard to Count 2, his statements during the jury instruction conference that "this could be error to admit this particular instruction," *id*. Vol. III at 963, "the Ostrich instruction, by deliberate ignorance, shouldn't be given," *id*., and "I think it's contrary to the case law now," *id*. at 964, do not qualify as proper objections to the instruction. *See* Walters v. Monarch Life Ins. Co., 57 F.3d 899, 904 (10th Cir. 1995) ("inconsistent" and "unfair" is argument, not specific objection); United States v. Zang, 703 F.2d 1186, 1196 (10th Cir. 1982) (generalized objection insufficient), *cert. denied*, 464 U.S. 828 (1983). In addition, he did not renew his "objection" to the deliberate ignorance instruction after the court finalized it or prior to the court instructing the jury.[3] *See* Fed. R. Crim. P. 30 ("No party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."). Finally, Bornfield failed to object to the form of the instruction as given. Therefore, we review the district court's deliberate ignorance instruction, both as to propriety and as to form, for plain error. *See* United States v. Lee, 54 F.3d 1534, 1540 (10th Cir.), *cert. denied*, 516 U.S. 895 (1995). Plain error exists when a clear or obvious error affecting substantial rights has seriously affected the fairness, integrity, or public reputation of the judicial proceeding. Johnson v. United States, ___ U.S. ___, ___, 117 S.Ct. 1544, 1549 (1997) (internal quotations and citations omitted); Fed. R. Crim. P. 52(b).

---

[3]     The government indicated at oral argument that Bornfield agreed to the instruction as given with respect to Count 1 after successfully arguing against the instruction with respect to Court 2. However, the record does not include the transcript pages cited to us by the government and the government did not supplement the record with these pages so we are unable to consider this possibility.

A deliberate ignorance instruction is appropriate if the defendant denies knowledge of an operative fact and the evidence demonstrates or creates the inference that the defendant deliberately avoided actual knowledge of that fact. Lee, 54 F.3d at 1538. It "alerts the jury that the act of avoidance was motivated by sufficient guilty knowledge to satisfy the . . . knowing element of the crime." United States v. de Francisco-Lopez, 939 F.2d 1405, 1409 (10th Cir. 1991) (internal quotations omitted). Thus, a deliberate ignorance instruction is proper "'*only* when evidence has been presented showing the defendant purposely contrived to avoid learning the truth.'" Lee, 54 F.3d at 1538 (quoting de Francisco-Lopez, 939 F.2d at 1409). In reviewing whether a deliberate ignorance instruction was properly tendered, we view the evidence in the light most favorable to the government. *Id.*

Viewing the evidence in the light most favorable to the government, we conclude that the district court did not commit plain error in instructing the jury on deliberate ignorance. Evidence was presented from which the jury could reasonably infer Bornfield consciously avoided actual knowledge that the $13,000 cash he received in payment for the check to cover Gonzagowski's portion of the land payment was criminally derived property. Special Agent Pat Shirey with the Internal Revenue Service Criminal Investigation Division testified as an expert in tax preparation and accounting that after examining Gonzagowski's 1991 and 1992 tax returns, which were prepared by Bornfield, "[Gonzagowski] had not reported enough income on the returns to cover the expenses that were on the returns" and "[t]here had to be some income from another source in order to meet those expenses," Appellant's Appendix, Vol. II at 704, and that "Bornfield had to know that the information on [Gonzagowski's 1991 and 1992 tax] returns was not correctly stated on the returns, that the returns were false as they were filed," *id.* at 706. Codefendant Gonzagowski testified that

he gave Bornfield an "eight-ball" or an 1/8 ounce of cocaine on four or five occasions as payment for preparation of his tax returns. *Id*. at 534. In his own testimony, Bornfield admitted that on at least two occasions Gonzagowski left cocaine on his desk, but denied that Gonzagowski left the cocaine in payment for tax preparation services. *Id*. Vol. III at 871-72. Bornfield also testified that in approximately 1985 when his partnership in the Wood Doctor Shop ended, he believed Gonzagowski was involved in cocaine dealing. *Id*. at 899. Finally, Laurenda testified that she told Bornfield that the cash she gave him was from Gonzagowski. *Id*. Vol. II at 402.

From this evidence, a jury could reasonably infer that Bornfield consciously avoided actual knowledge that the $13,000 cash given to him in exchange for his check for Gonzagowski's portion of the land payment was from Gonzagowski and that he deliberately avoided knowing Gonzagowski had another source of income beyond his legitimate roofing business, i.e., funds from the illegal sale of drugs. From these inferences, the jury could reasonably find that Bornfield deliberately avoided any actual knowledge that the $13,000 was criminally derived property. Therefore, we conclude that the district court did not commit plain error by giving the deliberate ignorance instruction. *See e.g.* Lee, 54 F.3d at 1539-40 (substantial evidence existed from which the jury could reasonably infer defendant consciously avoided actual knowledge of equity skimming); United States v. Fingado, 934 F.2d 1163, 1166 (10th Cir.), *cert. denied*, 502 U.S. 916 (1991) (deliberate ignorance instruction approved because facts supported the notion defendant was aware of high probability that his understanding of the law was in error and made a conscious decision to avoid actual knowledge). *But see* United States v. Hilliard, 31 F.3d 1509, 1516 (10th Cir. 1994) (deliberate ignorance instruction error where evidence created real possibility jury could have convicted defendant for negligence).

Finally, we hold that the form of the deliberate ignorance instruction did not constitute plain error. The court instructed the jury that:

> As it relates to Count One, you may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

(Appellant's Appendix, Vol. I at 168.) This instruction properly instructed the jury that in order to find knowledge based on deliberate ignorance, it must find the defendant purposely avoided learning the operative fact and it could not base its finding on what the defendant should have known. *See e.g.* United States v. Glick, 710 F.2d 639, 643-44 (10th Cir. 1983)(deliberate ignorance instruction not plain error), *cert, denied*, 465 U.S. 1005 (1984).

## II. Evidence of Prior Drug Use

Bornfield argues that the district court abused its discretion in admitting evidence of his prior recreational drug use with Terrell and Gonzagowski, in that this evidence erroneously allowed the jury to convict him based on the speculation that if he did drugs with Terrell and Gonzagowski, he must have known they were drug dealers. Bornfield states that evidence he used drugs with Terrell was irrelevant and served no proper purpose and that evidence of his drug use with Gonzagowski was unfairly prejudicial in view of the deliberate ignorance instruction.

As a preliminary matter, we observe that Gonzagowski did not testify that he used drugs with Bornfield. In fact, the district court ruled that testimony from Gonzagowski that he snorted cocaine with Bornfield on three or four occasions between 1987 and 1993 was not admissible. (Appellant's Appendix, Vol. I at 240.) Gonzagowski testified that on four or five occasions he paid Bornfield for

Bornfield's accounting services with an "eight-ball" of cocaine. *Id*. Vol. II at 534. Therefore, Bornfield's argument that the district court erred in admitting testimony of Gonzagowski's drug use with him is without any basis.

With respect to Terrell's testimony that he and Bornfield used cocaine together on 30-40 occasions, we must determine whether the district court abused its discretion in admitting this evidence. *See* United States v. Hill, 60 F.3d 672, 676 (10th Cir.) (admission of evidence under Fed. R. Evid. 404(b) is subject to review for an abuse of discretion), *cert. denied*, 516 U.S. 970 (1995). If the admission is erroneous, however, we will not disturb Bornfield's conviction if the error is harmless. Fed. R. Crim. P. 52(a); United States v. Cass, 127 F.3d 1218, 1224 (10th Cir. 1997), *cert. denied*, ___ U.S. ___ (1998). An erroneous admission of evidence is harmless unless it had a "substantial influence" on the outcome or leaves one in "grave doubt" as to whether it had such effect. Cass, 127 F.3d at 1224 (quoting United States v. Cestnik, 36 F.3d 904, 910 (10th Cir. 1994), *cert. denied*, 513 U.S. 1175 (1995)).

Courts may not admit "[e]vidence of other crimes, wrongs or acts . . . to prove the character of the person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, such evidence is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). To determine if the admission under 404(b) was proper, we apply a four-part test. Hill, 60 F.3d at 676. Federal Rule of Evidence 404(b) requires that: (1) the evidence be offered for a proper purpose; (2) the evidence is relevant; (3) the district court determine under Fed. R. Evid. 403 that the probative value of the evidence does not substantially outweigh its potential for unfair prejudice; and (4) the district court give the jury proper limiting instructions upon request. *Id*. In this case, the district court determined that Terrell's

testimony that he and Bornfield used cocaine together on 30-40 occasions prior to March 3, 1993, was admissible because relevance and reliability outweighed the Rule 403 prejudice concerns. (Appellant's Appendix, Vol. I at 226, 230, & 233.) Additionally, the district court *sua sponte* gave a limiting instruction, without objection by either party, that this evidence may only be used for the purpose of determining Bornfield's state of mind or knowledge with respect to Count 1. *Id*. Vol. I at 157; Vol. III at 986-87.

After a thorough review of the record, we hold that admitting Terrell's testimony of drug use with Bornfield was not reversible error. We reach this conclusion based on the fact that even if Terrell's testimony was admitted in error, as we assume for the purposes of this discussion, the error was harmless. Based on the record, we fail to see the relevance of Terrell's testimony that he and Bornfield used cocaine together on 30-40 occasions. The testimony was introduced for the limited purpose of establishing the knowledge requirement of the money laundering count, Count 1. However, the money laundering charge was based on Bornfield's receipt of $13,000 from Laurenda that was given to her by Gonzagowski. It is unclear from the record how Terrell's recreational drug use with Bornfield could establish, either directly or circumstantially, Bornfield's knowledge that cash received indirectly from Gonzagowski through Laurenda was criminally derived property.

The government argues that Terrell's testimony regarding using cocaine with Bornfield on 30-40 occasions could be used by the jury to establish Bornfield's knowledge of Gonzagowski's drug trafficking activities in view of Gonzagowski's testimony that Bornfield discussed investing drug proceeds in legitimate businesses with both Gonzagowski and Terrell. However, the jury did not need Terrell's testimony of recreational drug use with Bornfield to reach this conclusion. The testimony regarding the discussions themselves was sufficient, in our view, to support a finding of

Bornfield's actual knowledge of Gonzagowski's drug trafficking activities.

The record demonstrates that Terrell's testimony was not relevant to Gonzagowski's drug trafficking activities, the key to the money laundering charge. Thus, the impact on the jury, when considered in light of the evidence as a whole, was harmless. The government presented sufficient evidence that Bornfield actually knew or consciously avoided actual knowledge that the $13,000 cash was criminally derived property. *See* Part III *infra*. Therefore, assuming that the admission of Terrell's testimony was error, nevertheless, the error was harmless.

### III. Sufficiency of the Evidence

Bornfield maintains the government presented insufficient evidence to support the jury's guilty verdict for money laundering in Count 1. He asserts that there was insufficient evidence as to the knowledge element of money laundering, i.e., that he knew the transaction on March 3, 1993, involved criminally derived property. Bornfield argues that even if he suspected Gonzagowski to be a drug dealer prior to 1993, his suspicion alone does not support his conviction that he knew beyond a reasonable doubt.

"In reviewing a challenge to sufficiency of the evidence, we must determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In answering this question, we may neither weigh conflicting evidence nor consider the credibility of witnesses.'" United States v. Trammell, 133 F.3d 1343, 1351-52 (10th Cir. 1998) (quoting United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997)). Additionally, we consider all the evidence and all reasonable inferences therefrom in a light most favorable to the government. *Id*. at 1352.

Bornfield was convicted of money laundering under 18 U.S.C. § 1957(a), which prohibits "knowingly engag[ing] . . . in a monetary transaction in criminally derived property that is . . .

- 12 -

derived from specified unlawful activity." "In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity." 18 U.S.C. § 1957(c). In other words, "'[t]he knowledge element of the offense requires that the defendant know that the property in question is 'criminally derived,' although it does not require knowledge that the property was derived from 'specified unlawful activity.''" United States v. Allen, 129 F.3d 1159, 1164 (10th Cir. 1997) (quoting United States v. Pettigrew, 77 F.3d 1500, 1513 (5th Cir. 1996)).

In this case, the government presented sufficient evidence that Bornfield knew or deliberately avoided knowledge that the $13,000 cash was criminally derived property to support his conviction under 18 U.S.C. § 1957(a). As discussed previously, the government presented evidence, which taken in the light most favorable to the government, would support a finding that Bornfield deliberately avoided actual knowledge of Gonzagowski's illegal activities. In addition, Gonzagowski's testimony supports a finding that Bornfield actually knew the $13,000 cash was criminally derived property, specifically from the sale of drugs. Gonzagowski testified that: he told Bornfield he was a drug dealer, Appellant's Appendix, Vol. II at 653-55; in preparation of his 1991 tax return, he discussed his need to "cover" his expenses, which substantially exceeded his legal income, with some of his illegal income, *id.* 519-20; in 1990, Bornfield discussed with him and Terrell structuring a "loan" whereby he and Terrell would give Bornfield cash and Bornfield would structure a "loan" back to them with a check in order to open a legitimate business, *id.* at 531-32; and during discussions about opening a topless bar in 1992, Bornfield stated that he, Gonzagowski, "needed to do something" because he could not sell drugs forever, *id.* at 533. Therefore, we hold that there was sufficient evidence to support Bornfield's conviction under Count 1 for money

- 13 -

laundering.

## IV.  Juror Misconduct

Bornfield asserts he was deprived of his Sixth Amendment right to an impartial jury when

the district court refused to excuse Juror Shirley Scott after it became aware that Scott was biased

against the parties and had committed misconduct in the presence of other jurors.

It is well settled that the district court has broad discretion in determining how to handle

allegations of juror bias.  United States v. Santiago, 977 F.2d 517, 522 (10th Cir. 1992) (citing

United States v. Bradshaw, 787 F.2d 1385, 1389 (10th Cir. 1986)).  In this case, the juror misconduct

consisted of Juror Scott's voicing her displeasure with the pace of the trial to the courtroom clerk

and the court reporter on two separate occasions in the presence of other jurors.  The district court

carefully considered the issue, weighing the benefits and problems associated with talking to Juror

Scott and the other jurors.  The court decided, after discussion with the parties and over Bornfield's

objection, to dismiss Juror Scott as an alternate at the end of the trial.  In addition, the court told the

jury it observed "some annoyance and impatience" on the part of the jury and of the importance of

the case thanking them for their patience.[4]  (Appellant's Appendix, Vol. II at 695-96.)  We hold that

the court's dismissal of Juror Scott as an alternate was an appropriate exercise of its discretion and

did not deprive Bornfield of his Sixth Amendment right to an impartial jury.

## V.  Criminal Forfeiture

Bornfield states that the district court committed plain error in failing to instruct the jury on

---

[4]     Although we can discern from the record that the court briefly told the jury about the importance of the case and to be patient with the parties, the record does not contain the entire transcript of the proceeding.  *See* Appellant's Appendix, Vol. II at 695-96 (Trial Transcript pages 695-97 omitted).

what constitutes "involved in" for the purposes of the forfeiture instruction.[5] He argues that without

defining "involved in" the jury was not properly instructed as to the requisite nexus that must be

found between the offense and the property to be forfeited. In addition, Bornfield asserts that the

district court erred in ordering the forfeiture of $13,007.42 from his bank account inasmuch as the

"tainted" money (the money from drug sales) simply passed through his account on its way to the

escrow company, he gained no personal benefit from the transaction, and the government had already

located and forfeited the tainted funds in the form of the Los Lunas property. He asserts that the

other funds in his bank account (non-tainted money) were not involved in and did not facilitate the

money laundering offense. Finally, Bornfield contends that his assets are not forfeitable because he

acted simply as an intermediary to this transaction.

Here, the indictment contained a forfeiture allegation, which provided:

> 2. Money Laundering Forfeiture:
> (a) By virtue of the commission of the offense of money laundering as charged in Count 1 of this indictment, the defendant MIKEL L. BORNFIELD, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the said offense, and all property traceable to such property, including, but not limited to, the following:
> (1) Account number 01-2620936-0 and the contents thereof at Sunwest Bank, Albuquerque, New Mexico.

(Appellant's Appendix, Vol. I at 111.) The indictment also provided for the forfeiture of substitute

assets in the event the property specifically listed in the forfeiture allegation was not recoverable.[6]

---

[5]     Bornfield admits that he failed to object to the instruction as given and, as such, we are limited to review for plain error. (Appellant's Opening Brief at 49). *See* Lee, 54 F.3d at 1540 (absent objection we review jury instruction for plain error).

[6]     In the substitute assets allegation, the indictment states, "Such substitute property includes, but is not limited to, any property alleged to be forfeitable in paragraphs 2 and 3 of this Forfeiture Allegation." (Appellant's Appendix, Vol. I at 112.) However, as we discuss below,
(continued...)

- 15 -

*Id.* at 112.

After Bornfield's conviction on Count 1 for money laundering, the district court instructed the jury that:

> In view of your verdict that Mr. Bornfield is guilty of money laundering as charged in Count 1 of the indictment, you have one more task to perform before you are discharged. I now must ask that you render a special verdict concerning the property that the United States has alleged is subject to forfeiture to the United States.
>
> \*   \*   \*
>
> Under federal forfeiture laws, any person who is convicted of the offenses for which the defendant has been found guilty is required to forfeit to the United States the profits and instrumentalities of their illegal conduct.
>
> Specifically, the laws of the United States provide that any property, real or personal, involved in such offense or any property traceable to such property which belongs to the defendant is subject to forfeiture upon conviction of defendant for violation of title . . . 18 United States Code 1957.
>
> In this case, the United States has alleged that certain monies were involved in the money laundering offense for which the defendant was convicted. The portion of the forfeiture allegations in the indictment alleging this money to be forfeited to the United States is as follows:
>
> Money laundering forfeitures. By virtue of the commission of the offense of money laundering as charged in Count 1, the defendant, Mikel Bornfield, shall forfeit to the United States, pursuant to 18 United States Code 982(a)(1), all property, real and personal, involved in said offense and all property traceable to such property, including but not limited to the following: $13,007.42 located in account number 012620936-0 at Sunwest Bank in Albuquerque.
>
> It is your duty to determine what property, if any, should be forfeited. As to each property, you must decide whether the government has proved that the property was involved in the money laundering scheme. The government must prove its case for forfeiture beyond a preponderance of the evidence. . . .

---

[6](...continued)

this statement is erroneous. If an asset is forfeitable pursuant to 18 U.S.C. § 982(a), as paragraphs 2 and 3 allege, then it cannot be a substitute asset pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 583(p). *See infra*.

*   *   *

While deliberating, you may consider any evidence offered by the parties before your previous deliberations. A special verdict form has been prepared for your use. With respect to the property you are asked to determine whether it is subject to forfeiture to the United States. . . .

You will have noted that the $13,007.42 held in account number 012620936-0 at Sunwest Bank located in Albuquerque, New Mexico, is held in the name of Shalosh Enterprises. I charge that you should simply disregard any such title or formal claim of ownership of such property if you find, as I have previously charged, that such property was used or intended to be used in any manner or part to commit or to facilitate the commission of such violations.

This is because the right to any such property vested in the United States at the moment that the property was acquired by way of illegal acts prohibited in the statute. Any interest that another person may claim to have in such property can later be taken into account by this Court in imposing a sentence and in disposing of the property, and it is not for your consideration as jurors.

Stated differently, your sole task is to decide if this property, regardless in whose name it is now held, was intended to facilitate the defendant's money laundering . . . violation.

(Appellant's Appendix, Vol. III at 1018-21). The court then gave the jury a written copy of these instructions with a special verdict form and released them to deliberate. Shortly thereafter, the court recalled the jury to correct a misstatement made while reading the instructions to the jury and modify the instructions, as follows:

You will have noted that the $13,007.42 held in account number 012620936-0 at Sunwest Bank located in Albuquerque is held in the name of Shalosh Enterprises. I instruct you that you should simply disregard any such title or formal claim of ownership of such property. If you find, as I have previously instructed -- and this is the modification -- that such property was involved in the money laundering offense, the rest of the instruction remains the same, . . ..

Stated differently, your sole task is to decide if this property, regardless in whose name it is now held, was intended -- or was involved in the money laundering offense.

- 17 -

*Id*. at 1023-24. Essentially, the district court removed the language allowing the jury to find in favor of forfeiture if the property was "used or intended to be used in any manner or part to commit or to facilitate the commission of" money laundering and replaced it with the strict statutory language that the property must be "involved in the money laundering offense." *See id*. at 1021 and 1024.

The Special Verdict Form for Forfeiture asked:

> (a)    Was $13,007.42 in United States Currency involved in the money laundering offense charged in Count 1 of the Indictment?

*Id*. at 1030.  The jury returned a unanimous verdict of YES.  *Id*.

After extensive briefing by the parties, the district court entered an order of forfeiture pursuant to 18 U.S.C. § 982(b)(1)(A), 21 U.S.C. § 853(p), and Fed. R. Crim. P. 32(d)(2) for "$13,007.42 contained within account number 01-2620936-0 at Sunwest Bank, Albuquerque, New Mexico."  *Id*. at 1156.

As this case will aptly demonstrate, "[c]riminal forfeiture orders are something of a mongrel." United States v. Hurley, 63 F.3d 1, 23 (1st Cir. 1995), *cert. denied*, 517 U.S. 1105 (1996). First, the initial forfeiture is sought in the indictment and, absent a waiver of jury trial, is specified in the jury verdict.  *Id*. (citing Fed. R. Crim. P. 7(c)(2) and 31(e); 18 U.S.C. § 1963(m)).  Then, if the forfeited assets are unavailable, an order substituting assets may be made by the court.  Id.; 21 U.S.C. § 583(p).

Under the initial criminal forfeiture provision, "[t]he court, in imposing sentence on a person convicted of an offense in violation of . . . section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  18 U.S.C. § 982(a)(1).  This provision mandates that property

with the requisite nexus to the offense of conviction be forfeited. United States v. Hendrickson, 22 F.3d 170, 175 (7th Cir.), *cert. denied*, 513 U.S. 878 (1994). The key to whether property is forfeitable is whether it is "involved in" or "traceable to" the offense. 18 U.S.C. § 982(a)(1).

Property "involved in" an offense "include[s] the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and *any property used to facilitate the laundering offense*." United States v. Tencer, 107 F.3d 1120, 1134 (5th Cir.) (internal quotation omitted), *cert. denied*, ___ U.S. ___ (1997). "Facilitation occurs when the property makes the prohibited conduct 'less difficult or more or less free from obstruction or hindrance.'" *Id*. (quoting United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990)). Thus, as the court in Tencer concluded, the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture. *Id*. at 1134. However, forfeiture of legitimate and illegitimate funds commingled in an account is proper as long as the government demonstrates that the defendant pooled the funds to facilitate, i.e., disguise the nature and source of, his scheme. *Id*. at 1134-35.

In contrast, property "traceable to" means property where the acquisition is attributable to the money laundering scheme rather than from money obtained from untainted sources. *See* United States v. Voigt, 89 F.3d 1050, 1084-87 (3d Cir.) ("We hold that the term 'traceable to' means exactly what is says."), *cert. denied*, ___ U.S. ___ (1996); United States v. Saccoccia, 823 F. Supp. 994, 1005 (D.R.I. June 4, 1993), *aff'd by* 58 F.3d 754, 785 (1st Cir. 1995) (agreeing with district court's reasoning), *cert. denied*, 517 U.S. 1105 (1996). In other words, proof that the proceeds of the money laundering transaction enabled the defendant to acquire the property is sufficient to warrant forfeiture as property "traceable to" the offense. For example, if a defendant receives $500,000 in cash in a

money laundering scheme and hides the cash in his house, the government may seize that money as property "involved in" the money laundering offense. If, on the other hand, the defendant purchases a $500,000 item with that money, the government may seek the item purchased as property "traceable to" property involved in the money laundering offense. In both scenarios the property, the $500,000 cash or the item purchased with the cash, is forfeitable property pursuant to 18 U.S.C. § 982(a)(1).

Once an asset is determined to be "forfeitable" pursuant to § 982(a)(1), as either involved in or traceable to the offense of conviction, the seizure and disposition, including any administrative or judicial proceeding, is governed by the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 583(c) and (e) through (p). 18 U.S.C. § 982(b)(1)(A). Pursuant to § 583(p), the government may, in certain circumstances, seek forfeiture of substitute assets. In order to utilize the forfeiture of substitute assets provision, the government must establish that due to an act or omission of the defendant, the forfeited property:

> (1) cannot be located upon the exercise of due diligence;
> (2) has been transferred or sold to, or deposited with, a third party;
> (3) has been placed beyond the jurisdiction of the court;
> (4) has been substantially diminished in value; or
> (5) has been commingled with other property which cannot be divided
> without difficulty; . . ..

21 U.S.C. § 583(p). *See* <u>United States v. Sokolow</u>, 91 F.3d 414, 415 (3d Cir. 1996) (upheld substitution based on diminished value and transfer to third parties), *cert. denied*, ___ U.S. ___ (1997). If the government meets any one of these requirements, "the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5)." *Id*. However, in the case of money laundering offenses, the substitution of assets

provision is further limited.

> The substitution of assets provision of subsection [583(p)] shall not be used to order a defendant to forfeit assets in place of actual property laundered where such defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period.

18 U.S.C. § 982(b)(2). Thus, in order to forfeit substitute property in a money laundering case, a court must determine that (1) the initial forfeitable property involved in or traceable to the offense is unavailable pursuant to 21 U.S.C. § 583(p) and (2) the defendant is not merely an intermediary.

We hold that the district court did not commit plain error in instructing the jury on the issue of forfeiture by failing to define "involved in" in relation to money laundering. Here, the district court instructed the jury based on the language of the statute, without elaboration or clarification. *See* Appellant's Appendix, Vol. III at 1019-21, 1023-24. Although it is preferable that a jury to be instructed on what constitutes "involved in" and/or "traceable to" the offense, in this case the court's failure to so instruct did not rise to the level of plain error. The instruction followed the statutory requirements for forfeiture almost verbatim. *See e.g.* Tencer, 107 F.3d at 1134 ("involved in"); Voigt, 89 F.3d at 1084-87 ("traceable to"). In fact, the district court's first instruction, before modification, more appropriately instructed the jury because it contained language allowing forfeiture based on a theory of facilitation.

Bornfield was convicted of money laundering based on the March 3, 1993, exchange of $12,893 in cash for a check from his personal account in the amount of $13,007.42. *See* Appellant's Appendix, Vol. I at 109 (indictment Count 1). Following his conviction, the government became entitled to forfeiture of "any property, real or personal, involved in such offense, or any property

traceable to such property." 18 U.S.C. § 982(a)(1). Pursuant to § 982(a)(1), the government sought

forfeiture of all funds contained in account number 01-2620936-0 at Sunwest Bank, Albuquerque,

New Mexico.[7] (Appellant's Appendix, Vol. I at 111.) The jury was then instructed that the

government sought forfeiture of "$13,007.42 located in account number 01-2620936-0 at Sunwest

Bank, Albuquerque," New Mexico. *Id*. at 182; Vol. III at 1020. The jury ultimately returned a

verdict finding that $13,007.42 was involved in Bornfield's money laundering offense. *Id*. at 1030.

We will not reverse findings of fact unless there is clear error. *See* United States v. McIlvain,

967 F.2d 1479, 1479-80 (10th Cir. 1992) (findings to support restitution order reviewed for clear

error). "A finding of fact is not clearly erroneous unless it is without factual support in the record,

or if the appellate court after reviewing all the evidence, is left with the definite and firm conviction

that a mistake has been made." Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182,

1185 (10th Cir. 1990) (internal quotation omitted).

After thorough review of the record, we are left with a definite and firm conviction that

mistakes have been made. Thus, we conclude that the jury's verdict was clear error. The first error

stems from mass confusion between two accounts held by Bornfield at Sunwest Bank in

Albuquerque, New Mexico: his personal account, presumably held in his name, and his business

account, held in the name of Shalosh Enterprises. It is clear from the record that Bornfield

---

[7] In the indictment, the government alleged forfeiture of "(1) Account number 01-2620936-0 and the contents thereof . . .." (Appellant's Appendix, Vol. I at 111). However, we agree with the sentiments of the Seventh Circuit that, "Bank accounts do not commit crimes; people do. . . . An 'account' is a name, a routing device like the address of a building; the money is the 'property.'" United States v. $448,342.85, 969 F.2d 474, 476 (7th Cir. 1992). Thus, the account itself is not "property" subject to forfeiture, but merely a container to hold the "property" or money subject to forfeiture. In other words, the account number is merely used for identification purposes and is not itself a forfeitable item.

exclusively utilized his personal account in his money laundering transaction.  The record reflects that the $12,893 cash from Gonzagowski, which supported Bornfield's money laundering conviction, was deposited in Bornfield *personal* account in three separate transactions in the amounts of $6,003, $3,880, and $3,010, shortly after Bornfield issued a check from his *personal* account in the amount of $13,007.42.[8]  *See* Appellant's Appendix, Vol. I at 109 (indictment alleges exchange of cash for check issued on personal account); Vol. II at 404-05 (Laurenda testified $13,007.42 check was from his personal account); Vol. III at 832 (Bornfield acknowledges writing the $13,007.42 check out of his personal account); Vol. I at 6 and 32  ($13,007.42 check from personal account); Vol. I at 7 and 33 (cash deposited in personal account). In contrast, the record demonstrates that Bornfield's *business* account was exclusively associated with the allegations in Count 2 of illegal structuring of financial transactions.  Count 2 was based on the deposit of $5,000 and $7,000 in Bornfield's business account.  *See id*. Vol. I at 110.  These deposits were allegedly made to reimburse Bornfield for the $12,000 check he wrote out of his business account on behalf of Terrell for Terrell's portion of the land payment.  *See id*. Vol. I at 398; Vol. III at 830 and 832.

It is unclear from the record which account number is Bornfield's personal account and which is his business account.  In a preliminary motion, the government identified the Shalosh Enterprises account, his business account, as account number 01-3664899-5 and identified account number 01-2620936-0 as being in his name. *Id*. Vol. I at 58 n.2.  However, the government did not object to or comment on the identification of account number 01-2620936-0 as being held in the

---

[8]     This is clear despite the government's pre-trial statement that both Sunwest Bank accounts "form the basis of the structuring charges." (Appellant's Appendix, Vol. I at 58 n.2.)  If the statement was true, the government would have no basis for forfeiture of either account as Bornfield was not convicted of the structuring charge.

name of Shalosh Enterprises in the forfeiture portion of the jury instructions, which was given to the jury and read to the jury twice. *Id.* at 184; Vol. III at 1021 and 1023. As such, we cannot tell with certainty the proper identifications of the accounts.

This confusion between Bornfield's accounts resulted in either: (1) jury instructions that incorrectly identified Bornfield's personal account, number 01-2620936-0, as his business account, or (2) an indictment, jury instructions, special verdict,[9] and forfeiture order involving Bornfield's business account. *See id.* Vol. I at 111 (indictment alleged forfeiture of account number 01-2620936-0 at Sunwest Bank, Albuquerque, New Mexico); Vol. III at 1156 (same in forfeiture order); Vol. I at 184 (jury instructions stated "account number 01-2620936-0 at Sunwest Bank, located in Albuquerque, New Mexico, is held in the name of Shalosh Enterprises"); Vol. III at 1021 and 1023 (same). However, it is error whether the jury erroneously believed the account to be Bornfield's business account or actually forfeited his business account.

The jury's special verdict is clear error because the jury could not legally order the forfeiture of funds contained in Bornfield's business account. In this case, forfeiture is based on Bornfield's money laundering conviction. As noted above, the money laundering charge involved only the use of his personal account: the $13,007.42 check was drawn on his personal account and the $12,893 in cash was deposited in his personal account. Thus, while the funds in Bornfield's personal account, which actually contained the "tainted" money, may be properly forfeitable under § 982(a)(1) as funds "involved in" the money laundering offense, the funds contained in Bornfield's business

---

[9]     Although the special verdict returned by the jury does not specifically identify an account, it does refer to "the following property for which the government has alleged that the defendant has an interest" and the only property alleged to be forfeitable by the government was account number 01-2620936-0 at Sunwest Bank, Albuquerque, New Mexico. *See* Appellant's Appendix, Vol. III at 1030.

account, which according to the record had no connection to the money laundering offense, are not forfeitable assets. Hence, any initial forfeiture of the contents of Bornfield's business account is error.

Additionally, it is undisputed that the tainted funds were removed from Bornfield's personal account and that these funds were traceable to the escrow payment on the Los Lunas property. Thus, the corpus of the money laundering offense was not in Bornfield's account at the time of the indictment. It is also apparent from the record that Bornfield did not retain any portion of the "tainted" money or receive any commission or fee directly associated with the money laundering transaction.[10] Therefore, any money contained in his personal account would be subject to forfeiture solely under a facilitation theory, i.e., that the non-tainted funds assisted the money laundering scheme by hiding the tainted money. *See* Tencer, 107 F.3d at 1134. Under this type of theory, all of the money contained in the account at the time of the offense is forfeitable pursuant to § 982(a)(1) and the government is not limited to the amount of the corpus.[11] It appears the government attempted this type of forfeiture in the indictment. However, somewhere in the process the forfeiture allegation was altered to specify an amount exactly equal to the amount of the corpus laundered. The end result was a forfeiture that purports to forfeit the corpus of the money laundering scheme, even though the corpus was no longer in the account. This was clear error. Therefore, we vacate the

---

[10] The record reflects that Bornfield received an "eight-ball" of cocaine on a few occasions for the preparation of tax returns not associated with this transaction. *See* Appellant's Appendix, Vol. II at 534.

[11] Nor could the government mandate forfeiture of more than what was in the account at the time of the offense. The amount of the corpus laundered is irrelevant to this type of determination and forfeiture.

- 25 -

jury's special verdict on the issue of forfeiture.[12]

In addition, we vacate the district court's forfeiture order of May 5, 1997, which cannot stand absent a valid initial forfeiture. Absent the jury's valid initial award of forfeiture, the district court could not grant forfeiture pursuant to the substitute assets provision under 18 U.S.C. § 982(b)(1)(A) and 21 U.S.C. § 583(p), as the court purported to do in this case. *See* Hurley, 63 F.3d at 23 ("The implication is that [a forfeiture of substitute assets] order may commonly be entered after the initial forfeiture has been determined."). Additionally, even if the district court erroneously relied on the substitute assets provision, the court cannot grant forfeiture based on § 982(a)(1) absent a waiver of jury trial on the issue of forfeiture, which is not present in this case. *See id.*

We are also troubled by the court's award pursuant to the substitute assets provisions. An asset cannot logically be both forfeitable and a substitute asset. To allow such an anomaly would render the substitute assets provision meaningless. Assets involved in or traceable to the offense are forfeitable once the requisite nexus is established. *See* 18 U.S.C. § 982(a). The substitute assets provision allows the forfeiture of other assets not already forfeitable when the forfeitable asset is unavailable due to some act or omission of the defendant. *See* 21 U.S.C. § 583(p); United States v. Ripinsky, 20 F.3d 359, 365 n.8 (9th Cir. 1994) ("§ 982 . . . defines forfeitable assets to be only those associated with the underlying offense or traceable to the offense and distinguishes between 'forfeitable' and 'substitute' assets."). Here, the district court ordered forfeiture based on the substitute assets provision of the same asset alleged to be forfeitable. However, the court could not

_____

[12]     By statute, criminal forfeiture pursuant to 18 U.S.C. § 982 is a sentencing issue. 18 U.S.C. § 982(a)(1). *See* Libretti v. United States, 516 U.S. 29, 38-39 (1995) ("Forfeiture is an element of the sentence imposed following conviction, . . ..") (citing numerous forfeiture statutes). Thus, our vacating the special jury verdict on forfeiture does not affect Bornfield's substantive conviction for money laundering under Count 1 of the indictment.

logically order the forfeiture of § 982(a)(1) forfeitable assets pursuant to § 982(b) and § 583(p), the substitute assets provisions.

Finally, we address Bornfield's contention that his assets are not subject to forfeiture because he is an intermediary. As noted above, the intermediary exception applies only to the issue of whether substitute assets are subject to forfeiture. *See* 18 U.S.C. § 982(b)(2). Bornfield's argument confuses the distinction between forfeitable assets and substitute assets. Bornfield's argument is moot based on our conclusion that the jury's special verdict is error. However, we note that, based on our review of the record and the plain language of 18 U.S.C. § 982(b)(2), Bornfield would not be subject to the substitution of assets provision since he "handled but did not retain the property," there was only one transaction, and the amount laundered was much less than $100,000.[13] *See* Hendrickson, 22 F.3d at 175 ("Intermediaries, who do not retain the property laundered, but instead only reap a profit from their illicit transactions, are not subject to the substitute assets provision of § 982(b)(2) unless they exceed the $100,00 threshold . . .. Thus, only intermediaries, . . . who are financially capable of laundering large amounts of property are required to forfeit substitute assets, . . .").

Therefore, Bornfield's conviction for money laundering pursuant to 18 U.S.C. § 1957(a) is **AFFIRMED** and the jury's special verdict on forfeiture and district court's forfeiture order of May 5, 1997, are **VACATED**.

---

[13]    This observation in no way prevents the government from presenting additional evidence in a future motion for forfeiture of substitute assets, assuming it already has a valid initial forfeiture at the time and meets the requirement of 21 U.S.C. § 583(p).