# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 97-3248

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of South Dakota. |
| Lester A. Hawkey, | * |
| | * |
| Appellant. | * |

Submitted:  March 10, 1998

Filed:  June 24, 1998

Before BEAM and HEANEY, Circuit Judges, and WATERS,[1] District Judge.

HEANEY, Circuit Judge.

Lester A. Hawkey, a sheriff in Minnehaha County, South Dakota, was charged in a forty-one count indictment for misusing funds belonging to the Minnehaha Sheriff's Department (MSD) and the Minnehaha County Sheriff and Deputies Association

---

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

(MCSDA).[2]   A jury convicted Hawkey on all but two counts.[3]   On July 21, 1997, the district court sentenced Hawkey to forty-one months of imprisonment.[4]   On appeal, Hawkey challenges the sufficiency of the evidence supporting his convictions, the district court's implementation of the United States Sentencing Guidelines (Sentencing Guidelines) and certain forfeitures.  After a careful review of the record, we affirm as to the sufficiency of the evidence and the district court's implementation of the Sentencing Guidelines.  With respect to the forfeiture issue, however, we reverse and remand.

## I.  Background

In 1988, Hawkey, on behalf of the MSD and the MCSDA, entered into an agreement with Wildwood Productions, a benefit concert promoter,[5] to conduct annual benefit concerts each April.  The proceeds of the annual concerts were purportedly

---

[2]Hawkey's indictment included twenty-four counts of mail fraud in violation of 18 U.S.C. § 1341; eight counts of engaging in illegal monetary transactions with criminally derived property in violation of 18 U.S.C. § 1957(a); two counts of false income tax returns in violation of 26 U.S.C. § 7206(1); two counts of making false statements to a credit union in violation of 18 U.S.C. § 1014; one count of making a false statement in violation of 18 U.S.C. § 1001; three counts of misapplying local governmental property in violation of 18 U.S.C. §§ 2 and 666; and one count seeking forfeiture of property involved in the illegal monetary transactions pursuant to 18 U.S.C. § 982(a)(1).

[3]Hawkey was acquitted on the two counts of making a false statement to a credit union.

[4]Hawkey received a sentence of forty-one months for all counts except the false tax return counts, for which he received sentences of thirty-six months.  Hawkey was to serve all sentences concurrently.

[5]Wildwood provides telemarketing operations, promotes ticket sales, solicits donations, and promotes advertisement sales for charitable organizations.

intended to aid local youth programs. Prompted by Hawkey's representations, Wildwood's telemarketers solicited money from individuals and businesses in South Dakota and neighboring states for the purchase of tickets, donations, and/or to purchase advertising space in the concert program book. By United States mail, Wildwood sent statements or invoices to individuals and businesses who agreed to purchase tickets, advertise, or make donations. Individuals and businesses also sent their checks to either the MSD or MCSDA via the United States mail.

Wildwood's contracts with the MSD and MCSDA called for the establishment of two bank accounts. One account was to hold proceeds of ticket sales and the other was to hold the proceeds of advertisement sales. Shortly after the 1991 concert, Hawkey began using the concert accounts for a variety of personal and business expenses. While making some contributions to youth programs and charities, Hawkey spent a significant portion of the benefit concert proceeds for personal items. Hawkey also made deposits of business and personal funds to the concert account to replace depleted funds.

## II. Sufficiency of the Evidence

Hawkey challenges the sufficiency of the evidence used to support his conviction on all counts. In reviewing the sufficiency of the evidence supporting a criminal conviction, "we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Black Cloud, 101 F.3d 1258, 1263 (8th Cir. 1996). We reverse the conviction only if no reasonable jury could have found Hawkey guilty beyond a reasonable doubt. See United States v. Blumeyer, 114 F.3d 758, 765 (8th Cir. 1997) (citation omitted). The evidence supporting Hawkey's criminal conviction "need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." United States v. McGuire, 45 F.3d 1177, 1186 (8th Cir. 1995) (citation omitted). We can neither weigh the evidence nor

assess the credibility of the witnesses.  See Burks v. United States, 437 U.S. 1, 16-17 (1978).  "This standard is a strict one, and a jury verdict should not be overturned lightly." United States v. Sykes, 977 F.2d 1242, 1247 (8th Cir. 1992) (citation omitted). Applying this standard to the record before us, we conclude that ample evidence supports Hawkey's conviction on each count.

## A.  Mail Fraud

In Hawkey's challenge to the sufficiency of the evidence used to support his twenty-four count conviction for mail fraud, he argues that no one suffered any property loss and that there was no scheme or intent to defraud.  Title 18 U.S.C. § 1341 prohibits the use of the mails to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,  representations, or promises." 18 U.S.C. § 1341.  Accordingly, to obtain a conviction for mail fraud under § 1341, the government must prove "(1) the existence of a scheme to defraud, and (2) the use of the mails . . . for purposes of executing the scheme." United States v. Manzer, 69 F.3d 222, 226 (8th Cir. 1995).  The scheme "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995) (citation and internal quotation marks omitted).  The term "property" extends to intangible property rights. United States v. Shyres, 898 F.2d 647, 651 (8th Cir. 1990).[6]

Hawkey argues that, because the businesses received their advertisements and ticket purchasers were able to attend the concerts, they were not deprived of money or

_____

[6]For example, § 1346 clearly states under the chapter covering mail fraud, which includes § 1341, that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Also, the "deprivation of the right to control spending can serve as the basis for a mail fraud conviction." Shyres, 898 F.2d at 652.

4

property because they received what they paid for. We disagree. The record reveals that Hawkey solicited, or caused to be solicited, funds that were intended for charitable organizations; and, while some money was in fact paid to the charitable organizations, Hawkey converted most of the money for his own personal use. The businesses and concert-goers who responded to Hawkey's solicitations did not intend to merely purchase a ticket or advertising; they intended part of their payment as a contribution to a charitable organization.

Hawkey alternatively argues that there is insufficient evidence of a scheme to defraud because he did not control the telemarketer's solicitations, and the telemarketers did not represent to consumers that all of the concert proceeds would go to charity. Likewise, this argument is unavailing. A reasonable jury could have found that Hawkey intentionally engaged in a scheme by which money intended and solicited for charitable purposes was diverted from its designated charitable purpose to his personal benefit through false representations. The record reflects that the concerts were designed to raise money for charitable purposes; Hawkey knowingly diverted these funds for his personal benefit; and Hawkey failed to inform Wildwood, his accountant, the contributors, and the benefactors that he removed the funds for his personal benefit. Consequently, the jury permissibly concluded that there was a scheme in which Hawkey knowingly participated.

Hawkey contends that there was insufficient evidence to prove that he intended to defraud citizens responding to his solicitations. The jury was instructed that "to act with intent to defraud means to act knowingly and with the intent to deceive someone for the purpose of causing some financial loss . . . to another or bringing about some financial gain to oneself or another to the detriment of a third party." The jury found that Hawkey possessed the required intent to obtain personal gain from his misrepresentations and found him guilty of mail fraud. We conclude that this finding is supported by the record.

5

## B. Unlawful Monetary Transactions

Hawkey challenges the sufficiency of evidence supporting his conviction on eight counts of unlawful monetary transactions under 18 U.S.C. § 1957. Section 1957 "prohibits anyone from knowingly engaging 'in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity.'" United States v. Hare, 49 F.3d 447, 451 (8th Cir. 1995) (quoting 18 U.S.C. § 1957(a)). We believe that Hare correctly states the law and note that, in order to obtain a conviction under § 1957, the government is not required to prove that Hawkey "knew that the offense from which the criminally derived property was derived was specified unlawful activity." 18 U.S.C. § 1957(c). Section 1956(c)(7)(A) defines "specified unlawful activity" for the purposes of § 1957 as an offense listed in 18 U.S.C. § 1961(1), which includes mail fraud. 18 U.S.C. § 1956(c)(7)(A). See 18 U.S.C. § 1961(1)(B). See also § 1957(f)(3) (adopting the definition of "specified unlawful activity" provided in § 1956). After a careful review of the record and in light of our discussion of Hawkey's mail fraud conviction, we conclude that a reasonable jury could have found that Hawkey knowingly engaged in a monetary transaction in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity.

## C. Misappropriating Local Government Property

Hawkey challenges three counts of misappropriating local government property in violation of 18 U.S.C. §§ 2[7] and 666. To obtain a conviction under § 666, the

---

[7]Section 2 reads:

Principals
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

government must prove that Hawkey (1) was an agent of Minnehaha County at the time of the offense; (2) embezzled, stole, obtained by fraud, willingly converted, or intentionally misapplied Minnehaha County property worth at least $5,000; and (3) the offense occurred during the time in which Minnehaha County received in excess of $10,000 in any one year from a qualified federal program. See United States v. Valentine, 63 F.3d 459, 462 (6th Cir. 1995).

As sheriff, Hawkey was an agent of Minnehaha County. The record indicates that since October 1977, Hawkey owned and operated a for-profit inmate food service business.[8] During 1991 and 1992, Hawkey purchased federal surplus food with checks drawn on the benefit concert accounts and sold it to the Minnehaha County Jail for his personal profit. In January and September 1992, Hawkey purchased a 1991 Chevrolet Caprice and a 1990 Chevrolet Lumina van for his personal use with at least $27,450 of misappropriated county funds. Between January 1992 and May 1994, Hawkey charged prisoners in the custody of the Minnehaha County Sheriff's Department a fee for urinalysis testing, illegally keeping the fees for his personal use. Hawkey does not contest that Minnehaha County received in excess of $10,000 in any relevant year from a qualified federal program. We conclude that, under these facts, a reasonable jury could have found Hawkey guilty of misappropriating government funds.

---

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

[8]The South Dakota Federal Property Agency in Huron, South Dakota administers a donation program by distributing surplus federal property to eligible donees within South Dakota. Upon dispersal to an eligible donee, the donee must certify that it is a public agency or a nonprofit, educational or public institution or organization and that the property is being acquired for the intended official purpose and is not being acquired for any other use or purpose or for sale or other distribution.

## D.  False Income Tax Returns

Hawkey challenges the sufficiency of the evidence supporting his conviction of two counts of making false income tax returns in violation of 26 U.S.C. § 7206 (1). Hawkey argues that he lacked the necessary criminal intent for tax fraud because he believed the money he withdrew from the benefit concert accounts were loans rather than unreported income.  The jury was instructed to consider Hawkey's belief that unreported income was not income under the law.  As noted above, Hawkey did not disclose to Wildwood, his accountant, the contributors, and the benefactors the fact that he withdrew money from the concert accounts and converted them to his personal use. The fact that he made no record of the funds and was under no formal obligation to repay them provides sufficient evidence to support the  jury's conclusion that these funds were unreported income and Hawkey was therefore guilty of making false income tax returns.

## E.  False Statements

Hawkey challenges the sufficiency of the evidence used to support his conviction for false statements under 18 U.S.C. § 1001.[9]  The record indicates that Hawkey owned

---

[9]Section 1001 reads in relevant part:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

and operated a for-profit food service for inmates at the Minnehaha County Jail. Hawkey ordered county sheriffs to use county vehicles to purchase federal surplus food supplies with county checks. Only a nonprofit organization is eligible to participate in the federal surplus food program. By Hawkey's use of this program in a profit-making venture, a reasonable jury could have found that Hawkey knowingly deceived the federal surplus food program. Consequently, sufficient evidence supports his conviction for making a false statement.

## III. Sentencing Guidelines

Hawkey next raises three challenges to the district court's application of the Sentencing Guidelines. Our review of whether the district court properly applied the Sentencing Guidelines is de novo. United States v. Engelhorn, 122 F.3d 508, 510 (8th Cir. 1997). "We review findings of fact for clear error and give due deference to the district court's application of the Guidelines to the facts." United States v. Post, 25 F.3d 599, 600 (8th Cir. 1994) (citation omitted).

## A. Two-Level Enhancement for Abusing Position

Hawkey challenges the district court's imposition of a two-level enhancement for abusing his position of trust as a sheriff under U.S.S.G. § 3B1.3. Hawkey's argument that he did not use his position as sheriff to conceal his activity is unpersuasive because § 3B1.3 is not limited to concealment. Section 3B1.3 provides that if Hawkey abused his position of public trust "in a manner that significantly facilitated the commission or concealment of the offense, [the Guidelines mandate an increase of] 2 levels." U.S.S.G. § 3B1.3 (emphasis added). After carefully reviewing the record, we conclude that substantial evidence supports the conclusion that Hawkey abused his position as sheriff in a manner that significantly facilitated the commission

---

18 U.S.C. § 1001(a).

of the offense. Consequently, the district court did not commit clear error by imposing a two-level enhancement.

## B. Double Counting

Hawkey argues that his two-level enhancement under U.S.S.G. § 2S1.2(b)(1)(B) constitutes double counting and attempts to distinguish this case from United States v. Hare. Again, Hawkey's argument fails. As noted above, knowledge that the property at issue was derived from a specified unlawful activity is not a required element under § 1957. Under § 2S1.2(b)(1)(B), a two-level enhancement is warranted when "the defendant knew that the funds were not merely criminally derived, but were in fact the proceeds of a specified unlawful activity." U.S.S.G. § 2S1.2, comment. (backg'd.). We conclude that this case is governed by Hare; and "because this specific offense characteristic enhancement applies to conduct that is not an element of the offense, it does not amount to impermissible double counting." Hare, 49 F.3d at 452.

Alternatively, Hawkey argues that the record does not support the conclusion that he "knew that the funds were the proceeds of any other specified unlawful activity." U.S.S.G. § 2S1.2(b)(1)(B). We do not agree. As discussed above, Hawkey had knowledge of how the proceeds were derived and he had control over how they were spent. Because Hawkey clearly knew that he was using the funds for purposes other than those for which they were intended, we conclude that the district court did not err in applying the two-level upward adjustment.

## C. Acceptance of Responsibility

Hawkey alleges that the district court erred by failing to give him a two-level reduction for acceptance of responsibility. The Sentencing Guidelines provide for reducing a defendant's offense level by two "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal

conduct." U.S.S.G. § 3E1.1(a). "We give great deference to the district court 'when reviewing its evaluation of a defendant's acceptance of responsibility, and will disturb the district court's decision only if it is without foundation.'" United States v. Edgar, 971 F.2d 89, 92 (8th Cir. 1992) (quoting United States v. Russell, 913 F.2d 1288, 1295 (8th Cir. 1990)). Hawkey has yet to acknowledge that he wrongfully appropriated the charity's funds. On appeal, he continues to characterize the misappropriated funds as a loan. As such, we cannot say that the district court's decision to disallow the reduction is without foundation, and therefore affirm.

## IV. Forfeiture

Hawkey claims the district court erred by applying 18 U.S.C. § 982(a)(1) in ordering the forfeiture of $140,450.08,[10] the corpus of his ill-gotten gains (corpus), and a motor home.[11] Specifically, Hawkey argues that because this is "fundamentally a mail fraud case," the district court erred by failing to apply § 982(a)(2)[12] as the

---

[10]For the purpose of this appeal, we assume that $140,450.08 accurately represents the total funds that Hawkey misappropriated.

[11]On April 14, 1995, Hawkey purchased a 1992 Chevrolet conversion van with a cashier's check drawn from the "Community Service Program" account in the amount of $14,600.00. On July 5, 1995, Hawkey traded the van along with his own personal check in the amount of $18,675.00 for a 1995 Dodge 2500 Club Cab pickup truck. On February 28, 1996, the pickup was sold for $28,250.00 to pay off a $27,014.00, January 24, 1996 loan made to Hawkey and others. On January 17, 1996, Hawkey wrote a personal check for $27,040.00 to purchase a 1992 Fleetwood 35 Bounder Motor Home.

[12]Section 982 (a) (2) reads in relevant part:

The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate . . . section . . . 1341, . . . of this title, affecting a financial institution . . . shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

11

appropriate forfeiture statute and by failing to adjust the funds subject to forfeiture by (1) the amount that Hawkey returned to the concert accounts; (2) the purchase price of the motor home; and (3) the increased value to the motor home.

Section 982 (a) (1) reads, in relevant part: "The court, in imposing sentence on a person convicted of [violating] section . . . 1957 . . ., shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). The district court found that the entire corpus and the motor home were "involved in" or "traceable to" the unlawful monetary transaction and, thus, ordered their forfeiture under § 982 (a) (1). Because Hawkey was convicted of violating 18 U.S.C. § 1957(a), the district court correctly determined that the plain language of 982(a)(1) indicates its applicability to this case. Although the district court correctly identified § 982(a)(1) as the applicable forfeiture statute, we conclude that the district court misapplied the provision.

Property "'involved in' an offense 'include[s] the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.'" United States v. Bornfield, No. 97-2169, 1998 WL 239265 at *11 (10th Cir. May 13, 1998) (quoting United States v. Tencer, 107 F.3d 1120, 1134 (5th Cir. 1997)). "Facilitation [of a laundering offense] occurs when the property makes the prohibited conduct 'less difficult or more or less free from obstruction or hindrance.'" Tencer, 107 F.3d at 1134 (quoting United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990)). For example, if Hawkey used a personal computer to facilitate the unlawful monetary transactions, the personal computer would constitute "property used to facilitate the laundering offense" and would be forfeitable.

---

18 U.S.C. § 982 (a) (2).

12

Property "'traceable to' means property where the acquisition is attributable to the money laundering scheme rather than from money obtained from untainted sources." Bornfield, 1998 WL 239265 at *12 (citations omitted). "In other words, proof that the proceeds of the money laundering transaction enabled the defendant to acquire the property is sufficient to warrant forfeiture as property 'traceable to' the offense." Bornfield, 1998 WL 239265 at *12. For example, if Hawkey misappropriated $10,000 and used $5,000 of those funds to purchase a motorcycle, the motorcycle is "traceable to" the unlawful monetary transaction and is, therefore, subject to forfeiture.

Hawkey contends, and the government concedes, that he returned some of the wrongfully misappropriated funds to the concert accounts. Certainly if Hawkey misappropriated funds and used them to make a profit, the original funds and any profits are subject to forfeiture. Based on the above discussion, the original funds are "involved in" and any profit is "traceable to" the unlawful monetary transaction. We find no support in the statute, however, for the proposition that a defendant should not be credited with returning misappropriated funds.

The following discussion illustrates the proper application of § 982(a)(1). If, for example, Hawkey misappropriated $10,000 and purchased stock that appreciated in value to $30,000 at the time of forfeiture, Hawkey would be required to forfeit the stock. He would not, however, be required to forfeit an additional $10,000 because the entire corpus, here $10,000, would have already been converted into the stock. Also, if Hawkey misappropriated $10,000 and returned $5,000 prior to the forfeiture order, he would only be required to forfeit the remaining $5,000 of the corpus. Furthermore, in the event that Hawkey misappropriated $10,000 and purchased stock which had depreciated in value to $5,000 at the time of forfeiture, he would be required to forfeit $10,000--certainly the victim of the misappropriation should not bear the burden of his choice of investment. We conclude that while Hawkey must forfeit the entire corpus of his ill-gotten gains, the total funds subject to forfeiture must reflect any funds

returned prior to the forfeiture order or expended to procure property forfeited under § 982(a)(1)'s "traceable to" provision.[13]

Finally, Hawkey contends that the district court erred by failing to adjust the total funds subject to forfeiture by the value he added to the motor home. Our discussion above leads us to conclude that the district court correctly ordered that the motor home be forfeited without regard to any increased value that Hawkey may have added. Irrespective of whether the increased value to the converted property is the result of wise investment, personal effort by Hawkey, or by adding Hawkey's personal untainted funds, because the converted property is traceable to the unlawful monetary transaction, we conclude that the property is subject to forfeiture under the statute.

## V.

For the foregoing reasons, we affirm the district court as to the sufficiency of the evidence supporting Hawkey's convictions and the district court's implementation of the United States Sentencing Guidelines. With respect to the forfeiture issue, however, we direct the district court to hold a hearing and determine the appropriate forfeiture consistent with this opinion.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[13]As noted above, any instrumentalities that facilitated the misappropriation would also be forfeitable and, as the Bornfield court noted, there may be instances in which it is appropriate to order the forfeiture of an account that represents commingled tainted and untainted funds. See Bornfield, 1998 WL 239265 at *11.