# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1968

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Elmer Augustus Bell, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  January 12, 1999

Filed:  July 2, 1999

_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Elmer Augustus Bell pleaded guilty to aiding and abetting the possession of cocaine base with intent to distribute, using a minor in a drug trafficking offense, and failing to appear.  See 21 U.S.C. §§ 841(a)(1) and 861(a)(1); 18 U.S.C. §§ 3146(a)(1) and 2.  The district court[1] sentenced him to 235 months in prison.  Bell appeals, raising suppression and sentencing issues.  We affirm.

---

[1]The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas.

On December 31, 1993, while Pine Bluff police executed a search warrant at 2406 Remmel Street, several people standing outside the residence told Detective Johnny Alexander that if he wanted to "get the biggest drug dealer," he should go after Elmer Bell. According to these individuals, Bell used fourteen-year-old Tamika Ingram to distribute drugs for him. They added that Bell brought Ingram along on trips to Little Rock to buy drugs from a woman named Linda Bee, and that Ingram kept the drugs on her person when the two drove back to Pine Bluff. Bell had not been a target of the warrant search.

On January 12, 1994, another informant told Alexander that Bell was using Ingram to sell crack cocaine at 2314 Jean Street in Pine Bluff and had given Ingram crack cocaine to hide in her pants. This informant had previously set up a controlled buy of crack cocaine at 2314 Jean Street. Two days later, the same informant told Alexander that Bell and Ingram were again selling crack cocaine at 2314 Jean Street. Police executed a search warrant that day at the Jean Street residence. They found no drugs but did find walkie-talkies, consistent with an anonymous tip that Bell used children with walkie-talkies to warn him when police were coming.

On January 21, Alexander received a telephone call from Verlinda Harris, Bell's ex-girlfriend, who had previously provided reliable information about Bell. Harris told Alexander that Bell had borrowed her car and was driving with Ingram to Little Rock to buy crack cocaine from Linda Bee. She described the car, a gold Chevrolet Cavalier, and provided its license plate number. The Pine Bluff police decided to stop Bell as his car returned from Little Rock. They sought help from the Whitehall police (Whitehall lies between Little Rock and Pine Bluff), providing a description of the car and its occupants. Both police departments sent units to U.S. Highway 65 between Little Rock and Pine Bluff to intercept Bell's car. The Whitehall police stopped a car matching the description Harris had given Alexander. Bell was driving the car, with Ingram his passenger. When Pine Bluff officers reached the scene, Bell and Ingram were out of the car. Ingram began crying and admitted she had crack cocaine hidden

in her underwear.  A search of her person uncovered the 27.178 grams of crack cocaine that Bell now seeks to suppress.

Bell was indicted on two drug trafficking charges.  When he failed to appear for trial, he was indicted on the additional charge of failing to appear.  After he was apprehended, Bell moved to suppress the drugs found on Ingram's person after the January 21 stop.  The district court denied the motion following an evidentiary hearing.  Bell's subsequent guilty plea reserved his right to appeal this suppression issue.

## I.  The Suppression Issue.

Bell argues that the district court should have suppressed the crack cocaine found on Ingram's person because the police stopped his vehicle without probable cause and without a search warrant.[2]  The government primarily argues that Detective Alexander had probable cause to order the stop.  However, as an alternative argument, the government properly notes that motor vehicles and their occupants are also subject to investigative Terry stops.  See Alabama v. White, 496 U.S. 325, 327-329 (1990); United States v. Quarles, 955 F.2d 498, 501 (8th Cir.), cert. denied, 504 U.S. 944 (1992).  An investigative stop does not violate the Fourth Amendment if the police have reasonable suspicion that the vehicle or its occupants are involved in criminal activity. "[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause."  United States v. Sokolow, 490 U.S. 1, 7, 8 (1989).

--------

[2]Bell's distinct warrant argument is based on his assertion that, even if the police had probable cause to stop and search, they had time to obtain a search warrant after Harris called Alexander and before Bell's car returned from Little Rock.  This contention is without merit.  When police have probable cause to search a car, the Fourth Amendment does not require a warrant.  See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996); California v. Carney, 471 U.S. 386, 390-94 (1985).

After making a valid <u>Terry</u> stop, police officers must diligently work to confirm or dispel their suspicions in a short period of time. <u>See</u> <u>United States v. Willis</u>, 967 F.2d 1220, 1224 (8th Cir. 1992), and cases cited. If the officers who stopped Bell's car extended the stop beyond what is permissible during a <u>Terry</u> stop, the stop was a *de facto* arrest and must be justified by probable cause. The officers made the stop based on suspicion that Bell and Ingram were bringing drugs back from Little Rock. The officers had information that Ingram often hid drugs on her person. Promptly after the stop, Ingram exited the car and admitted there was crack cocaine on her person. That admission provided probable cause for the ensuing search. As the officers' investigative conduct did not exceed the permissible boundaries of a <u>Terry</u> stop, the stop was valid if they had reasonable suspicion that the car and its occupants were engaged in illegal drug trafficking.

We consider the totality of the circumstances in reviewing whether the police had reasonable suspicion to stop Bell's vehicle. To be reasonable, suspicion must be supported by "specific and articulable facts." <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968). The police acted on a tip from Ms. Harris, who provided detailed information that criminal activity was afoot. Bell argues there was insufficient corroboration of the tip. We disagree. Harris was a close acquaintance of Bell who had previously provided accurate information about him. Harris's tip -- that Bell and Ingram were driving to Little Rock to pick up crack cocaine from Linda Bee -- was consistent with information received from other sources less than a month earlier during the search at 2406 Remmel Street, and with more recent information that Bell and Ingram were selling drugs at 2314 Jean Street. Harris's tip was further corroborated when the officers saw a car matching the description Harris had provided traveling on U.S. Highway 65 in the direction of Pine Bluff. Reasonable suspicion can arise from an informant's tip "that is less reliable than that required to show probable cause." <u>White</u>, 496 U.S. at 330. Considering the totality of the circumstances, we agree with the district court that the stop did not violate Bell's Fourth Amendment rights.

Bell separately challenges the search of Ingram, but this contention is without merit. The officers' reasonable suspicion included the likelihood that Ingram was carrying drugs on her person, and they could conduct their Terry investigation accordingly. Almost immediately after the stop, Ingram admitted she was in fact carrying drugs, which gave the officers probable cause to arrest and to search her person. In addition, Bell has no standing to challenge the search of Ingram's person, as opposed to the stop of his car. See United States v. Gutberlet, 939 F.2d 643, 646 (8th Cir. 1991); United States v. Rodrequez, 859 F.2d 1321, 1325 (8th Cir. 1988), cert. denied, 489 U.S. 1058 (1989).

## II. Sentencing Issues.

For sentencing purposes, the district court grouped the three counts of conviction into a single offense group. See U.S.S.G. § 3D1.2. The base offense level for a group is the highest offense level of all the counts in the group. See U.S.S.G. § 3D1.3. Here, the court determined the base offense level was 32, using U.S.S.G. § 2D1.2(a)(1), the guideline for drug offenses involving underage individuals. The court then added two levels for obstruction of justice to account for Bell's failure to appear, and adjusted downward three levels for his acceptance of responsibility. See U.S.S.G. §§ 3C1.1, 3E1.1. Bell argues the result was impermissible double counting of his crimes.

Bell's crime of using a minor in a drug trafficking offense was "counted" once when U.S.S.G. § 2D1.2 was used as the base offense level for his grouped offenses. His crime of failing to appear was "counted" once when he received an upward adjustment for obstruction of justice, an adjustment the Guidelines expressly require when a failure-to-appear offense is grouped in this fashion. See U.S.S.G. §§ 2J1.6, comment. (n.3); 3C1.1, comment. (n.8). Thus, there was no impermissible double counting. Bell's reliance on United States v. Lloyd, 947 F.2d 339 (8th Cir. 1991), is misplaced. The problem in Lloyd was that an obstruction adjustment had been improperly based upon "conduct that is part of the crime itself." 947 F.2d at 340.

Here, on the other hand, Bell failed to appear at trial, an obstruction of justice that was independent of his drug trafficking crimes.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.