# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1756

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Sylvia R. Baker, also known as | * | |
| Sylvia Briggs, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 17, 1999

Filed: January 7, 2000

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and SIPPEL,* District Judge.

_____

LOKEN, Circuit Judge.

Acting as a licensed Missouri insurance agent, Sylvia R. Baker received insurance premium payments from several elderly clients and represented she would use the money to purchase insurance policies or annuities for them. Baker instead deposited the money in personal bank accounts and used it for her personal expenses.

_____

*The HONORABLE RODNEY W. SIPPEL, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

Following an investigation by the United States Postal Service, Baker was indicted and convicted of one count of mail fraud, two counts of insurance theft, and two counts of making false statements to the government, violations of 18 U.S.C. §§ 1341, 1033(b), and 1001. The district court[1] sentenced Baker to thirty months in prison. She appeals, arguing the evidence was insufficient to convict her of having made material false statements to the government and raising four sentencing issues -- the calculation of fraud loss and the imposition of adjustments for obstruction of justice, more than minimal planning, and abusing a position of private trust. We affirm.

## I. Sufficiency of the Evidence.

While investigating Baker's possible fraud, Postal Inspector T.A. Rebottaro and an official with the Missouri Department of Insurance interviewed Baker on June 4, 1997. During that interview, Baker falsely stated that she had withdrawn $100,000 from her bank account and returned the money to client Ethel Mae Leake as a refund of annuity premiums. This false statement was the basis of Count 4 of the indictment. Baker argues the statement was not material as a matter of law because Rebottaro did not believe it, and therefore it could not have influenced his investigation.

At trial, the jury was instructed that materiality is an element of a false statement violation of 18 U.S.C. § 1001, consistent with the law of this circuit. See United States v. Adler, 623 F.2d 1287, 1291 (8th Cir. 1980).[2] The materiality inquiry focuses on whether the false statement had a natural tendency to influence or was capable of influencing the government agency or official. Gaudin, 515 U.S. at 509. Materiality does not require proof that the government actually relied on the statement. See United

---

[1]The HONORABLE RUSSELL G. CLARK, United States District Judge for the Western District of Missouri.

[2]The Supreme Court noted but did not resolve a circuit conflict on this issue in United States v. Gaudin, 515 U.S. 506, 524 (1995) (Rehnquist, C.J., concurring).

States v. Hicks, 619 F.2d 752, 754-55 (8th Cir. 1980). Thus, the jury could reasonably have found that Baker's assertion she had refunded $100,000 to client Leake was material to the government's investigation of her fraudulent activities.

In November 1997, Baker filled out U.S. Postal Service Form 1583, authorizing the Post Office to deliver her mail to an agent, "PostNet," in Branson, Missouri. Baker provided a fictitious home address on the Form, and that false statement was the basis of Count 5 of the indictment. Again, Baker argues the statement was not material as a matter of law. We disagree. There was evidence that Baker intentionally made herself hard to find during the investigation. In addition, the Branson Postmaster testified that the home address provided on a Form 1583 is necessary for the Post Office to carry out its core function of delivering the mail if the designated agent ceases operations. That is sufficient evidence of materiality. See United States v. Wodtke, 951 F.2d 176, 178 (8th Cir. 1991). Baker further argues the government failed to prove she prepared the false Form 1583. However, Baker herself testified that she did not want to list her real home address, so "I just put down something."

## II. Sentencing Issues.

A. The Calculation of Loss. The district court increased Baker's total offense level by seven levels based on its finding that her fraud offense caused losses exceeding $120,000. See U.S.S.G. § 2F1.1(b)(1)(H). In making this determination, the court aggregated victim losses, primarily client Ethel Leake's loss of $100,000 and client Lois Bellm's loss of $44,878.54. On appeal, Baker argues the district court erred because she refunded those losses. That argument is legally insufficient. "The amount of fraud loss for sentencing purposes is the greater of the loss defendants intended to inflict at the time of the fraud, or the actual loss, so later repayments do not necessarily affect the loss determination under § 2F1.1." United States v. Coon, 187 F.3d 888, 899 (8th Cir. 1999). In any event, the district court found that the losses were not refunded, and the trial evidence supports that finding. Thus, the court's amount-of-loss

determination was not clearly erroneous.  See United States v. Mills, 987 F.2d 1311, 1315 (8th Cir.) (standard of review), cert. denied, 510 U.S. 953 (1993).

B.  The Adjustment for Obstruction of Justice.  The Sentencing Guidelines authorize a two-level upward adjustment if the defendant provides a materially false statement to a law enforcement officer that significantly obstructs or impedes an official investigation.  U.S.S.G. § 3C1.1 & comment. (n.4(g)).  Baker contends that the district court erred by imposing this sentencing adjustment based upon the false statements underlying her conviction on Counts 4 and 5.  "A district court's enhancement for obstruction of justice is a factual finding that we review for clear error."  United States v. Hunt, 171 F.3d 1192, 1196 (8th Cir. 1999).

Baker first argues that her false statements were not material to and did not significantly impede the government's investigation.  The jury found that Baker's false statement during Inspector Rebottaro's interview was material to his investigation.  The other false statement, the fictitious home address on Postal Service Form 1583, contributed to the investigators' inability to find Baker between March 31 and July 14, 1998.  In these circumstances, the district court's findings that the false statements were material and significantly impeded the government's investigation were not clearly erroneous.  Compare United States v. Smith, 62 F.3d 1073, 1079 (8th Cir. 1995) (false address warrants obstruction adjustment if it "actively impeded arrest and resolution of her case"), cert. denied, 516 U.S. 1098 (1996); United States v. Cohen, 60 F.3d 460, 463 (8th Cir. 1995); United States v. Penn, 974 F.2d 1026, 1029-30 (8th Cir. 1992).

Baker next argues that her false statement to Inspector Rebottaro was essentially a denial of guilt and cannot form the basis for an obstruction adjustment.  She relies on U.S.S.G. § 3C1.1, comment. (n.2) -- "[a] defendant's [unsworn] denial of guilt . . . is not a basis for application of this provision" -- as applied in cases such as United States v. Yankton, 986 F.2d 1225, 1228 (8th Cir. 1993).  The Supreme Court recently eliminated the legal basis for this commentary when it overruled countless circuit court

decisions and held that the prohibition in 18 U.S.C. § 1001 includes a false "exculpatory no." See Brogan v. United States, 522 U.S. 398 (1998). Putting aside the possible impact of Brogan on this sentencing issue, Baker's argument must be rejected because her false statement was far more than a mere denial of guilt. Baker provided an exculpatory version of her dealings with client Ethel Mae Leake that caused Inspector Rebottaro to conduct an analysis of the financial activity in Baker's bank accounts, an analysis demonstrating that Baker never withdrew $100,000 to refund to Leake. As we said in United States v. Lange, 918 F.2d 707, 709 (8th Cir. 1990), a defendant has a right to put the government to its proof but "[t]here is no constitutional right to lie." See also United States v. Anderson, 68 F.3d 1050, 1056 n.4 (8th Cir. 1995).

Finally, Baker argues that a sentencing adjustment for false statements that also violated 18 U.S.C. § 1001 is impermissible double counting under our decisions such as United States v. Lamere, 980 F.2d 506, 516-17 (8th Cir. 1992). We disagree. The Guidelines deal explicitly with this situation:

> If the defendant is convicted both of an obstruction offense . . . and an underlying offense . . . the count for the obstruction offense will be grouped with the count for the underlying offense . . . . The offense level for that group . . . will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

§ 3C1.1, comment. (n.8). The total offense level for Baker's grouped offenses was the offense level for her underlying fraud offense. See U.S.S.G. § 2F1.1. The fraud was completed before she obstructed justice. Thus, her obstruction offenses were "counted" only once, through the obstruction adjustment. There was no impermissible double counting. See United States v. Bell, 183 F.3d 746, 749-50 (8th Cir. 1999).

C.  The Multiple Victim Enhancement.  Adopting the recommendation in Baker's presentence investigation report, the district court imposed a two-level increase under U.S.S.G. § 2F1.1(b)(2)(A) and (B) because her fraud offense involved more than minimal planning, or a scheme to defraud more than one victim.  On appeal, Baker argues the court erred in imposing a more-than-minimal-planning adjustment because her fraud offense was "simple stealing."  However, Baker does not deny that she defrauded more than one victim.  The district court's finding of more than one victim is sufficient to support the § 2F1.1(b)(2) two-level increase.  See United States v. Ravoy, 994 F.2d 1332, 1336 (8th Cir. 1993).

D. The Abuse of Trust Adjustment.  The PSR recommended a two-level upward adjustment because Baker "abused a position of private trust."[3]  Baker timely objected to this recommendation, and the probation officer responded:

> Ms. Baker was an independent contractor life insurance agent. . . .  She owned . . . the Midwest Regional Agency [and] was the sole proprietor of the business.  In this position, she . . . had total control over the insurance or annuity purchases. . . .  When a person purchases an insurance policy, the check is usually written to the insurance company.  In this case, the defendant would have the check made out to her personally or to her agency.  She would then cash the checks. . . .  It is the opinion of the Probation Office that the defendant did hold a position of private trust and used her position to facilitate her crimes.

At sentencing, after hearing arguments of counsel, the district court found that Baker held a position of trust.  The court adopted the findings in the PSR and imposed the two-level adjustment.  On appeal, Baker argues that the court failed to make supporting findings on this issue, as Fed. R. Crim. P. 32(c)(1) requires.  We disagree.  Having tried

---

[3]U.S.S.G. § 3B1.3 provides, "If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels."

the case, the district court may base sentencing findings on the trial record. See United States v. Marshall, 92 F.3d 758, 760-61 (8th Cir. 1996). The PSR included a lengthy explanation of the Probation Officer's recommendation. Our review of the trial record confirms that the facts enumerated in the PSR were amply supported by the evidence. In these circumstances, the court's findings, though cryptic, were sufficient.

Baker next argues that she did not occupy a position of trust vis-a-vis her clients -- she only had their confidence, which is characteristic of all schemes to defraud. The appropriate standard of review for this issue is not well settled. In general, we review the district court's interpretation of the Guidelines de novo and its findings of fact for clear error. See United States v. Hawkey, 148 F.3d 920, 926 (8th Cir. 1998). In United States v. Brelsford, 982 F.2d 269, 272 (8th Cir. 1992), we seemed to treat the position-of-trust issue as one of law, finding "no error in the district court's conclusion that Brelsford held a position of private trust." But in United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994), we concluded that the district court did not abuse its discretion in imposing a § 3B1.3 adjustment. The Seventh Circuit has said it reviews "the meaning of 'position of trust'" de novo, and whether the defendant "occupied a position of trust" for clear error. United States v. Stewart, 33 F.3d 764, 768 (7th Cir. 1994). That conceptual dichotomy seems difficult to apply, at least in this case.

The position-of-trust inquiry undoubtedly has both a legal and a factual component. Given the language of the guideline and its commentary, we agree with the Fourth Circuit that, as a matter of law, "ordinary commercial relationships do not constitute a trust relationship sufficient to invoke the § 3B1.3 enhancement." United States v. Moore, 29 F.3d 175, 180 (4th Cir. 1994). On the other hand, as the facts in Brelsford illustrate, the issue is fact intensive because it turns on the precise relationship between the defendant and her victims and therefore cannot be decided on the basis of generalities such as "lawyers and doctors occupy positions of trust but bank tellers and insurance agents do not." In this case, Baker was an insurance agent who persuaded her elderly clients to give her personal control over their premium

payments and then misappropriated those monies. As a matter of law, we conclude that a licensed insurance agent with control over client funds *may* occupy a position of private trust. As a matter of fact, the district court's finding that Baker occupied a position of private trust in this case was not clearly erroneous. Compare United States v. Trammell, 133 F.3d 1343, 1355-56 (10th Cir. 1998); United States v. Sokolow, 91 F.3d 396, 412-13 (3rd Cir. 1996), cert. denied, 519 U.S. 1116 (1997).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.