# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2323

_____

United States of America,

           Appellee,

v.

Lucy Mitchell,

           Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted:  September 14, 2004
Filed:  November 12, 2004

_____

Before LOKEN, Chief Judge, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Lucy Mitchell appeals her conviction of one count of aiding and abetting the making of a material false statement to an Immigration and Naturalization Service (INS) officer in violation of 18 U.S.C. §§ 1001 and 2.  Mitchell contends that the district court erred in finding that the statement was false, that the statement was material to the INS, and that Mitchell aided and abetted the making of the false

statement. For the reasons discussed below, we affirm the judgment of the district court.[1]

## I. BACKGROUND

This case arises from an immigration fraud scheme involving Arkansas businessman David Jewell Jones. Through his friend, restaurant owner Tony Ma, Jones arranged for Yue Hao Zhong to travel from China to the United States under a fiancé visa on the representation that she would marry Jones' friend, Levy Johns. In reality, Zhong was brought to the United States to serve as Jones' sexual partner. Upon her arrival in Arkansas, Zhong was given a room in Tony Ma's house and a job in Ma's adjacent restaurant. On the day after Zhong arrived, Jones visited Ma's house and had sexual intercourse with Zhong. Zhong then continued to have sex with Jones approximately once a week over the next eleven months. When her 90-day fiancé visa expired, Zhong became an illegal alien.

After Zhong's relationship with Jones ended, Ma instructed Zhong to leave his house, telling her that he did not want to harbor an illegal alien. Zhong moved in with a neighbor. Knowing little English, Zhong turned for help to Jimmy Ng, a patron of Ma's restaurant who understood Zhong's language. Ng's co-worker, Lucy Mitchell, took an interest in Zhong's story.

Mitchell arranged a June 13, 1997 phone interview for Zhong with Dwight Hite, an investigator for an Arkansas law firm. During the phone interview, Ng interpreted for Zhong, and Mitchell actively participated with frequent explanatory comments. Zhong told Hite that Jones had sex with her at their initial encounter. Hite asked if there was "a mutual agreement on this." Zhong responded, "Yeah."

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

Mitchell taped this interview. Hite later informed Mitchell that his law firm saw no value in the case.

Mitchell and Ng next visited the Pulaski County Sheriff's Office, which decided to place a call to INS Special Agent Ronald Kidd. On June 26, 1997, Mitchell told Kidd the outline of Zhong's story over the phone and stated that Jones had raped Zhong the day after her arrival in the United States. Kidd then traveled to Arkansas on July 1, 1997 to interview Zhong. Ng and Mitchell were present at the interview. An INS interpreter participated by phone to translate for Zhong. In this interview, Zhong told Kidd that, at her initial encounter with David Jewell Jones, "David forced me to have sex with him." When Kidd asked if Zhong resisted, Zhong replied, "I did resist, but I was powerless."

After an investigation spurred by Zhong's story, the Government indicted Jones, Levy Johns, Tony Ma and his wife, and two others for conspiring to violate U.S. immigration laws by bringing Zhong and another woman from China to the United States on fraudulent fiancé visas. In the indictment, the Government listed Jones' forced sex with Zhong as an overt act in furtherance of the conspiracy.

At the immigration fraud trial, Zhong initially testified that Jones forced her to have sex. However, after a tape of her interview with Hite surfaced, Zhong recanted, testifying instead that she had sex with Jones by mutual consent. That trial ended in a mistrial. The Government obtained a superseding indictment replacing the allegation of forced sex with one of a "sexual relationship" between Jones and Zhong as an overt act in furtherance of the conspiracy. Jones and Ma were convicted at the second immigration fraud trial.

Zhong was indicted for making a false material statement to the INS in violation of 18 U.S.C. § 1001, and Ng and Mitchell were indicted under 18 U.S.C.

§§ 1001 and 2 for aiding and abetting the making of the false material statement.[2] Zhong and Ng pleaded guilty. Mitchell waived her right to a jury trial. At the close of Mitchell's bench trial, the district court directed Mitchell to file a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The district court denied Mitchell's motion and found her guilty of aiding and abetting the making of a false statement by Zhong to Kidd. She was sentenced to forty hours of community service and two years of probation and fined one hundred dollars.

## II. DISCUSSION

Mitchell's appeal challenges the sufficiency of the evidence presented in her bench trial. "When the determination of a question of fact is also determinative of the ultimate question of guilt, it is the duty of the appellate court to determine whether there is substantial evidence, taking the view most favorable to the government, to support the fact determination by the trial court." *United States v. Swayne*, 700 F.2d 467, 471-72 (8th Cir. 1983) (quoting *United States v. Cady*, 567 F.2d 771, 774 (8th Cir. 1977)).

Mitchell was charged under 18 U.S.C. § 1001(a)(2), which provides:

Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title or imprisoned not more than 5 years, or both.

---

[2]An additional count against Mitchell and Ng for persuading Zhong to give false testimony in violation of 18 U.S.C. § 1512(b)(1) was dismissed by the Government on the day of the trial.

The district court found that Zhong's statement was false, that it was material to the INS, and that Mitchell aided and abetted the making of the statement. Each of these fact findings is determinative of Mitchell's guilt. Therefore, in order for Mitchell's conviction to stand, each of these findings must be supported by substantial evidence.

## A.     The False Statement

The Government presented substantial evidence to support the district court's finding that Zhong's statement to Kidd was false. In her July 1, 1997 interview, Zhong told Kidd that, during her initial encounter with Jones, "David forced me to have sex with him." When Kidd asked if Zhong resisted, Zhong replied, "I did resist, but I was powerless."

There is broad evidentiary support that Zhong's statement to Kidd was false. Zhong's representation to Hite, just eighteen days earlier, that sex in the initial encounter was by "mutual agreement" directly contradicts her statement to Kidd. Furthermore, Ng testified that, when Zhong first described her initial encounter with Jones to him, she did not allege any use of force by Jones. Finally, on the stand under oath in Jones' first trial, Zhong recanted her testimony that Jones forced her to have sex and admitted they had sex by mutual agreement. The district court did not err in finding that Zhong's statement to Kidd was false.

Mitchell contends that Zhong's statements about force and resistance were not false because they were never meant to suggest to the INS that the sex was compelled by force or violence in the nature of a rape. According to this argument, Zhong was only attempting to describe to Kidd how she reluctantly acquiesced to a sexual relationship with Jones in order to remain in the United States, and the INS misunderstood her statements. The district court found that Zhong's statements about her initial encounter with Jones were meant to convey the concept of a violent or

forced sexual encounter. This finding is supported by substantial evidence in the plain meaning of Zhong's words to Kidd. We note further that Zhong accurately described a relationship of reluctant acquiescence in her interview with Hite eighteen days earlier, and Mitchell has not suggested why Zhong would have been incapable of making the same description to Kidd if that is what she meant to convey.

## B.      Materiality of the False Statement

For purposes of 18 U.S.C. § 1001, a statement is material if it has a natural tendency to influence or is capable of influencing the government agency or official. *United States v. Baker*, 200 F.3d 558, 561 (8th Cir. 2000). Materiality does not require proof that the government actually relied on the statement. *Id.*

The district court's determination that Zhong's statement to Kidd was material to the INS is supported by substantial evidence. First, Kidd testified that the INS views violent crime as an "elevating circumstance" in determining whether to devote resources to a visa fraud investigation. An allegation of forced sex would, therefore, tend to influence a government agency by making the INS more likely to pursue the investigation. Furthermore, although actual reliance need not be shown, we note that the government, including the INS as the primary criminal investigatory agency in this case, actually relied upon Zhong's statement by listing it as an overt act in furtherance of the conspiracy in the first indictment in the Jones immigration fraud prosecution. The Government presented substantial evidence that the false statement was capable of influencing and actually did influence the INS in this case.

Mitchell argues that the forced sex allegation could not have been material because Kidd admitted the INS would have investigated Jones even absent that allegation. This argument fails. The test is not whether the false statement was the determinative factor in an INS decision, but rather, whether the statement had a natural tendency to influence the INS. *See, e.g., United States v. Robertson*, 324 F.3d

1028, 1030 (8th Cir. 2003) (holding that, although the defendant made a confession sufficient to support a conviction for the charged crime, the defendant's associated false statements to investigating law enforcement officers were still material because they had a natural tendency to influence the course of the investigation). The district court did not err in finding that Zhong's false statement to Kidd was material to the INS.

## C.    Aiding and Abetting

There are three essential elements of aiding and abetting: (1) the defendant associated herself with the unlawful venture; (2) the defendant participated in it as something she wished to bring about; and (3) the defendant sought by her actions to make it succeed. *United States v. Rojas*, 356 F.3d 876, 878 (8th Cir. 2004); *United States v. McCracken*, 110 F.3d 535, 540 (8th Cir. 1997).

Mitchell urges us to rely on Zhong's testimony that Mitchell never directly told her to do or say anything. While a language barrier may have hindered Mitchell's communication with Zhong, direct verbal communication is not a necessary element of aiding and abetting. Zhong's testimony indicates that she perceived Mitchell to be participating fully with Ng in encouraging her to lie to the Government. For example, Zhong testified that Mitchell often was present, conferring with Ng in English, while Ng encouraged Zhong to claim that Jones forced her to have sex. In addition, Zhong testified that Mitchell was visibly angry with her after the Hite interview because she failed to claim that Jones forced her to have sex. Even absent direct verbal communication from Mitchell to Zhong, Zhong's testimony regarding her perceptions of Mitchell's involvement provided substantial evidence to support the district court's finding that Mitchell aided and abetted the making of the false statement.

Furthermore, the tape of the Hite interview shows that Mitchell was present and attentive when Zhong represented to Hite that she and Jones had sex by mutual agreement in their initial encounter. Just thirteen days later, while arranging Zhong's interview with Kidd, Mitchell told Kidd that Jones raped Zhong in their initial encounter. Taking the view of this evidence most favorable to the Government, Mitchell primed Kidd to believe a statement from Zhong that Mitchell knew would be false. Mitchell then sat by silently while Zhong told Kidd that, during their initial encounter, Jones forced her to have sex with him and she resisted. After the interview, Mitchell called Kidd frequently to check on the progress of the INS investigation of Jones and never warned Kidd that Zhong had previously stated that she had sex with Jones by mutual agreement.

Finally, on the day the tape of the Hite interview surfaced during the first Jones immigration fraud trial, Kidd testified that Mitchell appeared stunned and denied knowing anything about the tape, although she admitted her own handwriting was on the tape label. Taking the view of the evidence most favorable to the Government, this behavior suggests that Mitchell was fully aware of the possible consequences of Zhong's false statement and of her own complicity in the matter.

Substantial evidence supported the district court's conclusion that Mitchell wished to bring about the false statement and sought by her actions to make it succeed. The district court did not err in finding that Mitchell aided and abetted the making of the false statement to Kidd.

## III. CONCLUSION

We conclude that there is substantial evidence to support the district court's findings that Zhong's statement to Kidd was false, that the statement was material to the INS, and that Mitchell aided and abetted the making of the statement. Accordingly, we affirm the district court.

_____